IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| FERNANDO NUNEZ, ) | |
| ) | |
| Plaintiff, ) | Civil No. 2:12-cv-00188-BSJ |
| ) | |
| v. ) | |
| ) | |
| BASEM HAMDAN, STEPHEN ) | **MEMORANDUM OPINION** |
| BERNARDS, and SHANE BURTON, ) | **& ORDER** |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |
| ) | |
| BASEM HAMDAN, ) | |
| ) | |
| Counterclaim Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FERNANDO NUNEZ, ) | |
| ) | |
| Counterclaim  Defendant. ) | |

<div style="border:1px solid black;">

**FILED**
CLERK, U.S. DISTRICT COURT
September 25, 2013 (2:44pm)
DISTRICT OF UTAH

</div>

\* \* \* \* \* \* \* \* \*

This case arises from competing claims of ownership of a used car, a civil matter that

branched into a criminal proceeding—briefly—and that branching yielded to a civil action for

damages, declaratory and injunctive relief under 42 U.S.C. §§ 1983 & 1985, along with several

state tort law claims.[1]

**UNCONTROVERTED FACTS**

Beginning in March 2009, plaintiff Fernando Nunez was a car salesman working at Utah

Valley Motors 2 in South Salt Lake City Utah, a dealership is owned by Defendant Basem

_____

[1](*See* Amended Complaint, filed March 26, 2012 (CM/ECF No. 15).)

Hamdan. In August 2009, Nunez took in trade a 1990 BMW 735i ("the BMW") from a customer to whom he sold another car. The contract for sale between the customer and Utah Valley Motors 2 reflected the trade-in. The title to the BMW was signed by the previous owner, but did not list the name of the buyer. Neither Hamdan nor Nunez applied for a new certificate of title for the BMW, and Nunez retained the title provided by the previous owner as well as the BMW itself.

Nunez quit working for Hamdan in November 2009 because Hamdan allegedly was not paying Nunez according to their agreement. Nunez then went to work at another used car dealership down the street, and parked the BMW there.

The previous owner of the BMW applied for a duplicate title on February 12, 2010, and indicated to the Utah Department of Motor Vehicles that Utah Valley Motors 2 was the owner. Hamdan applied for a Dealership Title for the BMW the same day, and, as of February 17, 2010, Utah Valley Motors 2 held the certificate of title to the BMW.

The next day, Hamdan reported the car stolen. Officer Steven Bernards, then of the South Salt Lake Police Department, filed the stolen vehicle report. Officer Bernards had a previous relationship with both Hamdan and Nunez, and was alleged to have offered to buy the BMW from Nunez, but was unwilling to pay the asking price.[2] The stolen vehicle report filed by Officer Bernards was thereafter included in the NCIC computer database of stolen vehicles.

In February of 2010, Officer Burton was employed as an officer of the Special Operations

---

[2]After an internal affairs investigation initiated by Nunez, Bernards was found to have engaged in conduct unbecoming an officer for accepting the report from Hamdan rather than calling the complaints into dispatch, and for reporting vehicles as stolen instead of referring Hamdan to the civil process. Bernards retired from the South Salt Lake Police Department two days before the findings were formalized.

Unit of the Motor Vehicle Enforcement Division of the Utah State Tax Commission, primarily

charged with investigating and returning stolen vehicles. On February 19, 2010, Burton

reviewed the "hot sheet," which collected stolen vehicle reports in the area. Officer Burton had

no knowledge of the circumstances under which the BMW had been placed on the NCIC list, and

had never met Bernards and was unaware of any relationships among Bernards, Nunez, and

Hamdan.

Officer Burton began his investigation of the BMW by accessing a database that showed

the current title owner was Utah Valley Motors 2. He spoke with Hamdan, who provided the bill

of sale for the BMW to Utah Valley Motors 2 from the previous owner, and his February 2010

title documentation. Hamdan claimed that the original title from the previous owner had been

stolen by Nunez.

Officer Burton then proceeded to the car dealership where Nunez was currently working,

and where the BMW was parked. He called in the vehicle identification number to South Salt

Lake City Police Department and confirmed it was the BMW reported stolen. Officer Burton

interviewed Nunez and his wife, Felicita. Mr. and Mrs. Nunez both claimed that Nunez had

received the car from Hamdan as payment for back wages, and presented the title signed by the

previous owner. However, neither Nunez nor his wife had any documentation showing a sale or

transfer of the BMW from Hamdan to Nunez, and Hamdan's title (acquired in Feburary 2010)

was newer than Nunez's. Nunez also mentioned that Officer Bernards would know something

about the vehicle. Burton attempted to contact Bernards, but was unable to, as Bernards was off

duty that day.

On the basis of the title status, the stolen vehicle report and his investigation, Officer

Burton determined that Hamdan had superior title to the allegedly stolen BMW vehicle, and took possession of the BMW. Motor Vehicle Enforcement Division policy provides that the rightful owner may take possession of the vehicle, immediately upon recovery, instead of the victim having to pay for the vehicle to be towed and recovered from an impound lot. Pursuant to that policy, then Officer Burton returned the BMW to Hamdan.

Officer Burton did not arrest Nunez for the alleged car theft, but instead created an affidavit of probable cause, describing his investigation, and including in the information that Burton had spoken with Nunez, who stated that "Mr. Hamdan owed him money when he left Utah Valley Motors 2 and he took the car as payment." Nunez was subsequently charged with theft, a second degree felony, but was never confined in jail. In September 2010, the case was dismissed on motion of the Salt Lake County District Attorney.

Thereafter Nunez commenced this civil action against Hamdan, Bernards, and Burton, pleading § 1983 claims against Burton for malicious prosecution, "Taking without Due Process," denial of equal protection, substantive due process and the First Amendment right to petition, as well as a civil rights conspiracy to deprive Nunez of due process, actionable pursuant to 42 U.S.C. § 1985. Burton filed a motion for summary judgment on all of Nunez' claims (CM/ECF No. 40), asserting that no civil rights violation had occurred and raising the defense of qualified immunity. The substantive due process, § 1985 conspiracy, and petition claims were then abandoned by Nunez, and Burton's motion as to the remaining claims was fully briefed and heard by this court on February 25, 2013. At that time, the court heard argument of counsel and

took the matter under advisement.[3]

In the meantime, defendant Hamdan had filed his own motion for summary judgment (CM/ECF No. 46), which was fully briefed and heard on July 3,2013.  The court heard argument on Hamdan's motion and reserved on the matter, requesting counsel to obtain and furnish information to the court and counsel concerning the details and timing of Hamdan's request for issuance of a new title for the BMW in February of 2010.[4]  The matter was set for further consideration on August 2, 2013.

At the August 2nd hearing, the court heard further argument by counsel on both motions. Having heard and considered the memoranda and exhibits submitted by the parties and the arguments of counsel concerning the plaintiff's claims, the court granted Burton's motion and denied Hamdan's motion.[5]

## ANALYSIS

Summary judgment may be granted to the moving party when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Jones v. Salt Lake County*, 503 F.3d 1147, 1152-53 (10th Cir. 2007) (citing former Federal Rule or Civil Procedure 56(c)).  As the moving party, Officer Burton bears the "initial burden of demonstrating the absence of any genuine issue of material fact to support the non-moving party's case."  *Jensen v. Kimble*, 1 F.3d 1073, 1076 (10th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "'An issue is

---

[3](*See* Minute Entry, dated February 25, 2013 (CM/ECF No. 50).)

[4](*See* Minute Entry, dated July 3, 2013 (CM/ECF No. 65).)

[5](*See* Minute Entry, dated August 2, 2013 (CM/ECF No. 67).)

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (quoting

*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002)).

> Although the party moving for summary judgment "bears the initial burden of
> demonstrating an absence of a genuine issue of material fact," it can satisfy that
> burden with respect to an issue on which it does not bear the burden of persuasion
> at trial "simply by indicating to the court a lack of evidence for the nonmovant on
> an essential element of the nonmovant's claim." *Id.* at 971. Once the moving
> party has done so, "the burden shifts to the nonmoving party to go beyond the
> pleadings and set forth specific facts showing that there is a genuine issue for
> trial." *Id.*

*Id.* (quoting *Sally Beauty Co.*).

Motions for summary judgment based on qualified immunity are treated differently than

other summary judgments. "When a defendant asserts qualified immunity at summary judgment,

the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and

(2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022

(10th Cir. 2013) (internal quotation omitted); *accord Fancher v. Barrientos*,723 F.3d 1191, 1199

(10th Cir. 2013); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "'If, and only if, the

plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant

for summary judgment—showing that there are no genuine issues of material fact and that he or

she is entitled to judgment as a matter of law.'" *Rojas v. Anderson*, --- F.3d ----, 2013 WL

3389450, at *2 (10th Cir., July 9, 2013) (quoting *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th

Cir. 2008) (internal quotation marks omitted)).

**Officer Burton's Motion for Summary Judgment**

.        **Count 1 – Malicious Prosecution**

The "ultimate question [in a federal malicious prosecution claim] is the existence of a

constitutional violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1290 (10th Cir. 2004) (internal

quotations & citations omitted). "Following *Albright*, in the § 1983 malicious prosecution

context, that constitutional right is the Fourth Amendment's right to be free from unreasonable

seizures." *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). Thus, to prevail, a plaintiff

must first show that he was "seized." As the court of appeals explains.

> The elements of the common law tort of malicious prosecution, as applicable in a
> § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement
> or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there
> was no probable cause to support the original arrest, continued confinement, or
> prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained
> damages.

*McCarty v. Gilchrist*, 646 F.3d 1281 (10th Cir. 2011) (quoting *Novitsky v. City of Aurora*, 491

F.3d 1244, 1258 (10th Cir. 2007)); *see Taylor*, 82 F.3d at 1562-63.

Officer Burton does not contest that a criminal proceeding was commenced against

plaintiff Nunez, and that the criminal proceeding terminated in Nunez' favor. Rather, Nunez'

malicious prosecution claim fails because he has not come forward with significant probative

evidence demonstrating a seizure, a lack of probable cause, or that Burton acted with malice.

It seems plainly apparent that the BMW was "seized" by Officer Burton, but plaintiff

Nunez was not. Nunez asserts that Officer Burton threatened him with arrest, but did not take

Nunez into custody. Our court of appeals has declined "to expand Fourth Amendment liability

in cases where the plaintiff has not been arrested or incarcerated," *Becker v. Kroll*, 494 F.3d 904,

915 (10th Cir. 2007).[6]

"Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent [officer] in believing that an offense has been or is being committed." *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). The standard is an objective one, and the subjective belief of an individual officer is not dispositive. *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999).

In making a probable cause determination as to the BMW, Office Burton was entitled to rely upon information from a reasonably trustworthy source, including victim statements, reports from other law enforcement agencies, and the NCIC database. *See United States v. Hensley*, 469 U.S. 221, 231 (1985); *United States v. Shareef*, 100 F.3d 1491, 1503 (10th Cir. 1996); *cf. Miller v. City of Nichols Police Dep't*, 42 Fed. App'x 212, 216 (10th Cir. 2002) (unpublished disposition) (holding that "the NCIC report indicating that the vehicle had been reported as stolen, as related to the officers by the dispatcher, was sufficient to provide probable cause for arrest" and further holding that the officer had no constitutional obligation to further investigate the dispatcher's report); *accord United States v. Hines*, 564 F. 2d 925, 927 (10th Cir. 1977) ("[I]nformation received from the NCIC computer bank has been routinely accepted in establishing probable cause for a valid arrest.").

---

[6]In *Becker*, the court observed that "'[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control.' *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). In our cases analyzing malicious prosecution under § 1983, we have always proceeded based on a seizure by the state—arrest or imprisonment." 494 F.3d at 514. Plaintiff Becker "conceded she was never arrested, incarcerated, or otherwise placed under the direct physical control of the state. Accordingly, Becker was never 'seized' in the traditional sense." *Id.*

Here, Officer Burton reviewed the NCIC report, which he verified with the South Salt Lake Police Department. He also had a computer database printout showing that Hamdan's title was the later issued. He reviewed the titles that Hamdan and Nunez presented. Officer Burton took the statements of Mr. Nunez, Mrs. Nunez, and Mr. Hamdan. Officer Burton acknowledged that Mr. Nunez made a claim to the vehicle as payment for back wages, but believed that it was more likely that given the more recent certificate of title, Mr. Hamdan was the rightful owner.

There were certainly conflicting statements and beliefs as to the rightful ownership of the BMW. Furthermore, Mr. Nunez has alleged, Mr. Hamdan had a motive to fabricate the truth about how Nunez came into the possession of the BMW. But even if the NCIC report, the documentary evidence, and Mr. Hamdan's statement do not provide proof beyond a reasonable doubt, probable cause does not require facts sufficient for a finding of guilt. *United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir. 2004). And though, in hindsight, another officer may have made a different decision about the vehicle's ownership, it does not change the analysis. Officer Burton had probable cause to believe that Hamdan was the rightful owner of the BMW, and that Nunez may have stolen the vehicle.

Similarly, plaintiff has failed to demonstrate that there is a genuine issue as to whether Officer Burton acted with "malice," that is, for a primary purpose other than bringing an offender to justice. *See Schettler*, 768 P.2d at 959. There is no legally sufficient evidence in the record to suggest that Officer Burton did anything other than respond to a report of a stolen vehicle, followed official policy in determining the owner, returning the car to the probable owner, and filing the requisite paperwork detailing the investigation.

**Count 2 – "Taking without Due Process"**

Nunez' Second Cause of Action seeks damages for the deprivation of the BMW allegedly "in violation of his conditional right that prevents the deprivation of property without due process of law" as protected by the "Fifth and Fourteenth Amendment[s]."[7]  Though originally styled as a "takings" claim, Nunez clarified in his opposition to summary judgment that the claim "was complaining of an illegal seizure of the Plaintiff's property with the purpose of transferring that property to Defendant Hamdan."[8]

In general, due process is satisfied in the criminal seizure context so long as the Fourth Amendment is satisfied.  *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases.").  And, as discussed above, the requirements of the Fourth Amendment were satisfied because Officer Burton had probable cause to believe the vehicle was stolen.  The vehicle was in plain view, and Officer Burton was authorized by law to seize it without a warrant.  *See* Utah Code Ann. § 41-1a-1101(1)(a)(i); *Payton v. New York*, 445 U.S. 573, 586-87 (1980).

Nunez contends that the correct course of action for Officer Burton was "to impound the BMW as a stolen vehicle and let the matter be determined by the courts."  But towing and impounding the vehicle would add additional costs to the owner, and Officer Burton has testified

---

[7](*See* Amended Complaint, filed March 26, 2012 (CM/ECF No. 15), at ¶¶ 56, 57.)

[8](Plaintiff's Memorandum in Opposition. to Defendant's Motion for Summary Judgment (CM/ECF No. 44), at 18.)

that, when possible, MVED policy permits stolen vehicles to be immediately returned to their

owners to prevent their "revictimization" by payment of storage fees.   These concerns are

magnified in this case, where the vehicle itself had a market value of little more than a few

hundred dollars.  Moreover, the post-deprivation civil remedies of a conversion or replevin

action against Hamdan is available (which Nunez has availed himself of in this case) if Nunez'

property was wrongfully placed in Hamdan's possession.  *See City of West Covina v. Perkins*,

525 U.S. 234, 240-242 (1999); *PPS, Inc. v. Faulker Cnty., Ark.*, 630 F.3d 1098, 1107-08 (8th Cir.

2010).  Officer Burton is entitled to summary judgment on Nunez' Second Cause of Action.

### Count 3 – Equal Protection

In the Third Cause of Action, Nunez alleges that Officer Burton caused charges to be

brought against him and deprived him of possession of the BMW because of his race, in

violation of the Equal Protection Clause of the Fourteenth Amendment, which  prohibits any

state from "deny[ing] to any person within its jurisdiction equal protection of the laws."  U.S.

Const., Amend. XIV.  The Equal Protection Clause is "essentially a direction that all persons

similarly situated should be treated alike."  *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432,

439 (1985).  A § 1983 claim for violation of the equal protection clause requires a showing of

purposeful discrimination.  *See Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 & n.1 (10th Cir.

1990).

Nunez appears to plead a claim of selective prosecution, that is, that a criminal charge

was pressed against him because of his race, and  "claims asserting selective enforcement of a

law on the basis of race are properly brought under the Equal Protection Clause"; here, "the right

to equal protection may be violated even if the actions of the police are acceptable under the

Fourth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th

Cir.2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

The court of appeals instructs that "[b]road discretion has been vested in executive branch

officials to determine when to prosecute, . . . and by analogy, when to conduct a traffic stop or

initiate an arrest." *Id.* at 1167 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

> Police officers and departments should not lightly be put to the expense and risk
> of trial on charges of racial discrimination that may be easy to make and difficult
> to disprove. Not only does litigation divert prosecutorial resources and threaten
> an excessive judicial interference with executive discretion, but it could induce
> police officers to protect themselves against false accusations in ways that are
> counterproductive to fair and effective enforcement of the laws. . . . Perhaps for
> these reasons, the Supreme Court has held that "to dispel the presumption that a
> prosecutor has not violated equal protection, a criminal defendant must present
> 'clear evidence to the contrary.'" . . .

*Id.* (quoting *Armstrong*, 517 U.S. at 465 (quoting *United States v. Chemical Foundation, Inc.*,

272 U.S. 1, 14–15 (1926))). As far as the standards of proof needed for a plaintiff to withstand a

motion for summary judgment in a case of alleged racially discriminatory action by an officer,

the Court has "taken great pains to explain that the standard is a demanding one." *Armstrong*,

517 U.S. at 463.

> The requirements for a claim of racially selective law enforcement draw
> on what the Supreme Court has called "ordinary equal protection standards."
> *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480 (quoting *Wayte v. United States*, 470
> U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). The plaintiff must
> demonstrate that the defendant's actions had a discriminatory effect and were
> motivated by a discriminatory purpose, *Armstrong*, 517 U.S. at 465, 116 S.Ct.
> 1480. . . . The discriminatory purpose need not be the only purpose, but it must be
> a motivating factor in the decision. *Villanueva v. Carere*, 85 F.3d 481, 485 (10th
> Cir. 1996) (quoting *Village of Arlington Heights v. Metropolitan Hous. Dev.
> Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). To withstand
> a motion for summary judgment, a plaintiff in a § 1983 suit challenging alleged
> racial discrimination in traffic stops and arrests must present evidence from which
> a jury could reasonably infer that the law enforcement officials involved were

motivated by a discriminatory purpose and their actions had a discriminatory effect.

*Marshall*, 345 F.3d at 1168.

To meet *Armstrong*'s "demanding" standard, Nunez must present "clear evidence" that demonstrates that Officer Burton's actions had a discriminatory effect and were motivated by a discriminatory purpose—a purpose that must be a motivating factor in the decision to take the action he did.

Nunez' evidence of racially discriminatory purpose comes from his own testimony, allegedly overhearing Officer Burton say "Stupid Spanish," "they can't do anything," and use the derogatory term "spic" one time in a conversation with Mr. Hamdan. Viewing the evidence in a light most favorable to the non-moving party, and assuming the epithets were spoken in the manner testified to by Nunez, they are generally insufficient, without more, to form the basis of a civil rights action for selective prosecution.[9] Nunez needs some other "circumstantial proof of intent and selective enforcement," *Eberhart v. Gettys*, 215 F. Supp. 2d 666, 677-78 (M.D.N.C. 2002), to establish a triable issue of fact on his equal protection claim.[10]

Apart from the remarks overheard, Nunez proffers no significant probative evidence to

---

[9]*See Helton v. Dornan*, No. 97 C 0220, 1999 WL 58641 (N.D. Ill. Jan. 26, 1999), at * 9 (holding that an officer's use of a racial epithet during an arrest was insufficient to prove racial animus and selective prosecution, where probable cause existed for the arrest); *Edwards v. H.D.S.P.*, CIV S-10-2852 GEB, 2011 WL 846699 (E.D. Cal. Mar. 4, 2011), *aff'd sub nom. Edwards v. McDonald*, 11-17101, 2012 WL 5866071 (9th Cir. Nov. 20, 2012); *but cf. Eberhart v. Gettys*, 215 F. Supp. 2d 666, 677-78 (M.D.N.C. 2002) (holding that, in the context of "other circumstantial proof of intent and selective enforcement," an epithet may be some evidence of discrimination).

[10]The fact that Nunez himself was not arrested where a vehicle found in his possession had been reported as stolen weighs against drawing an inference that in investigating the matter, Officer Burton discriminated against Nunez because of race.

indicate any discriminatory effect as well as discriminatory treatment. Nunez provides no statistical—or even anecdotal—evidence of selective enforcement by Officer Burton, or any proof that people of another race or national origin were not prosecuted, or that reportedly stolen vehicles in their possession were not returned to complainants holding a facially valid certificate of title. *See Armstrong*, 517 U.S. at 465 ("To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."); *Marshall*, 345 F.3d at 1167-68.

Therefore, summary judgment will be granted to Officer Burton on the Equal Protection claim.

### The Remaining Claims.

Summary judgment on Nunez' remaining claims against Officer Burton—Substantive Due Process, § 1985 Conspiracy, and First Amendment Right to Petition—has been conceded by Nunez,[11] and the court concurs that summary judgment is thus appropriate on each of those claims.[12] Summary judgment will thus be entered on those counts as well.

---

[11](Plaintiff's Memorandum in Opposition. to Defendant's Motion for Summary Judgment (CM/ECF No. 44), at 20.)

[12]Officer Burton argued that summary judgment is warranted on the merits of these remaining claims because, among other reasons, Officer Burton's actions were not "outrageous" as required to support a substantive due process claim, *see County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528-31 (10th Cir. 1998); there is no evidence to indicate that Officer Burton had any substantive communication with Bernards or Hamdan, much less formed any conspiratorial agreement with them to support a claim of § 1985 civil rights conspiracy, *see Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993); *Abercrombie v. City of Catooska, Okla.*, 896 F.3d 1228, 1230 (10th Cir. 1990); and Officer Burton had no substantial knowledge of Nunez' wage claim, and there are no facts alleged to demonstrate that his actions concerning Mr. Nunez were substantially motivated by Nunez' wage claim—as is required to support a claim of First Amendment retaliation:

(continued...)

**Qualified Immunity**

Because this court concludes that Nunez has failed to come forward with significant probative evidence to demonstrate any of Nunez' claimed violations of his constitutional rights—the first prong of qualified immunity analysis—the court need not now consider whether any of the rights he points to were "clearly established" at the time of the events in February of 2010, the second prong of qualified immunity analysis. Officer Burton is entitled to qualified immunity as to the allegations that Nunez has pleaded against him.

**Basem Hamdan's Motion for Summary Judgment**

In contrast to Officer Burton, defendant Hamdan served as the primary instigator of the report that the BMW had been stolen, which led to the seizure of the BMW while in Nunez' possession and ultimately to the filing of an ill-fated criminal charge against Nunez. Both Nunez and Hamdan tell very specific and largely irreconcilable tales of the events that followed the trade-in of the BMW at Hamdan's dealership. Hamdan disputes Nunez' allegations of unlawful motive and purpose in reporting the BMW stolen, which triggered the sequence of events of which Mr. Nunez now complains. Drawing reasonable inferences in favor of the plaintiff as the non-moving party in this context, this court simply cannot conclude that no reasonable juror could find the material facts in favor of Mr. Nunez with respect to the claims he has alleged

---

[12](...continued)
"To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

against Mr. Hamdan. Genuine issues of fact exist, not the least of which is the question of rightful ownership of the BMW in or about February of 2010.

Mr. Hamdan has failed to meet his initial burden under Rule 56, and his motion for summary judgment must be denied.

## CONCLUSION

For the reasons articulated above, Officer Burton is entitled to summary judgment on all of the claims brought by Nunez against him. Mr. Hamdan is not.

Officer Burton is entitled to be dismissed from the case completely, and Nunez' claims against him will be dismissed with prejudice. Mr. Hamdan remains in this case, awaiting the next step: the Final Pretrial Conference.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Shane Burton's Motion for Summary Judgment (CM/ECF No. 40), is GRANTED; and

**IT IS FURTHER ORDERED** that defendant Basem Hamdan's Motion for Summary Judgment (CM/ECF No. 46) is hereby DENIED.

DATED this 25 day of September, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

-16-